Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000779
05-OCT-2021
07:58 AM
Dkt. 187 SO

NO. CAAP-19-0000779

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI,
Plaintiff-Appellant/Cross-Appellee,
v.
GREGORY ILLUMINATO TARTAMELLA,
Defendant-Appellee/Cross-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 1CPC-17-0001682)

SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, Hiraoka and Nakasone, JJ.)

Plaintiff-Appellant/Cross-Appellee State of Hawaiʻi (**State**) appeals from the Amended Judgment of Conviction and Probation Sentence filed on October 3, 2019 (**Judgment**), by the Circuit Court of the First Circuit (**Circuit Court**).[1] Defendant-Appellee/Cross-Appellant, Gregory Tartamella (**Tartamella**) cross-appeals from the Judgment. The Judgment was entered following a jury trial where Tartamella was convicted of all four counts as charged: Assault in the Second Degree in violation of Hawaii Revised Statutes (**HRS**) § 707-711(1)(e) in Count 1; two counts of Harassment in violation of HRS § 711-1106(1)(b) and/or (f) in Counts 2 and 3; and Terroristic Threatening in the First Degree in violation of HRS § 707-716(1)(c) in Count 4. The State requested restitution for the victim, Arnold Martinez (**Martinez**), for losses caused by Tartamella, and the Circuit Court awarded $462.50 in restitution. This restitution award, for half of the cost of service dog training for Martinez's dog, is at issue in both the appeal and cross-appeal.

---

1    The Honorable Faʻauuga L. Toʻotoʻo presided.

On appeal, the State contends that the Circuit Court abused its discretion when it awarded only half of the amount of requested restitution for the cost of the service dog training. On cross-appeal, Tartamella contends that the Circuit Court erred when it ordered restitution for the dog training because the dog training costs were neither reasonable nor verified.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve the State's and Tartamella's points of error as follows, and affirm.

Following the trial and guilty verdict, a presentence report that included letters from Martinez's doctors and therapists, receipts, and other documentation related to the victim restitution request was filed with the Circuit Court. The presentence report contained a letter from Dr. Ming B. Chi that confirmed Martinez had post-traumatic stress disorder (**PTSD**) caused by the assault, a letter from therapist Karen Kimball (**Kimball**) that verified a service dog was part of Martinez's therapy plan, and an invoice from Off Leash K9 Training, LLC for $625.00.

The Circuit Court held a restitution hearing on October 2, 2019. The State submitted its Memorandum of Law Supporting Requested Restitution of $882.22[2] to Complainant Arnold Martinez. The amount included $625.00 to train Martinez's dog and $150 in medical bills. At the hearing, Senior Probation Officer Keiko West (**West**) testified regarding the presentence report she wrote and the request for restitution. West's job was to write presentence reports to assist the trial court for sentencing, and she had also received training on how to apply the restitution statute. West testified that the letters Martinez submitted from

---

2    This $882.22 amount included medical visits, counseling, medical service dog training, and future expenses; specifically $150.00 for ten medical visits, $17.22 for medication, $625.00 for medical service dog training, and $90.00 for estimated future expenses. We note that the transcript of the restitution hearing indicates "State's Exhibit 1" was received into evidence at the hearing, but the exhibit is not in the record on appeal nor in the record below. However, West testified that State's Exhibit 1 was "part of my original pre-sentence report[,]" and was a "fair and accurate copy of Exhibit C" attached to the presentence report. "Attachment C" to the April 30, 2019 presentence report consists of Martinez's "Victim Impact Information" and includes the itemized expenses detailed above.

his therapist "specifically said that he needed the mental health treatment to deal with the trauma from the incident[,]" and West found the medical bills and therapy expenses were reasonable and verified as they "fit within the time period of the incident, and they were on Kaiser letterhead[.]"  West concluded that the medical service dog training expense was reasonable and verified based on the letter submitted by Martinez's therapist Kimball, and West had also called Kimball "to verify that she indeed wrote a letter, and she required that as part of [Martinez's] therapy." Tartamella did not call any witnesses or produce any evidence at the hearing.

At the conclusion of the restitution hearing, the Circuit Court reduced the amount of restitution for the dog training by half, from $625.00 to $312.50 because the dog was Martinez's "personal dog," and ordered a total of $462.50[3] in restitution as a free-standing order.

Both the State and Tartamella timely appealed.  We first address Tartamella's cross-appeal, followed by the State's appeal.

### Tartamella's Cross-Appeal

Tartamella contends in his cross-appeal that the Circuit Court abused its discretion by ordering $312.50 in restitution for the cost of dog training for Martinez's pet dog. The crux of Tartamella's argument is that the State failed to adduce evidence that Martinez's pet dog received specialized medical service dog training, and the State failed to show the cost was reasonable and verified "as medical service dog training."  Tartamella claims that the dog training "amounted to an obedience class and Martinez's pet dog was not certified as a medical service dog."

Tartamella waived this argument because he did not raise it during the restitution hearing.  See State v. Moses, 102 Hawaiʻi 449, 456, 77 P.3d 940, 947 (2003) ("As a general rule, if a party does not raise an argument at trial, that argument will be deemed to have been waived on appeal . . . ."); State v.

_____

3       The $462.50 amount included $150.00 for medical visits and $312.50 for half of the $625.00 total cost for the medical service dog training.

Hoglund, 71 Haw. 147, 150, 785 P.2d 1311, 1313 (1990) ("Generally, the failure to properly raise an issue at the trial level precludes a party from raising that issue on appeal.") (citation omitted). During the hearing, Tartamella's sole argument was that his conduct did not cause Martinez's PTSD, and attacking the credibility of Martinez's claim that he had PTSD:

> [DEFENSE COUNSEL]: Judge, as the Court is well aware based upon what's contained in the presentence report, as well as the evidence presented at trial, Mr. Martinez, according to him, suffered a -- a bruise on his left arm as a result of being slapped by Mr. Tartamella, that -- that's it. From that incident, he is -- he's -- he's claiming that he now suffers from posttraumatic stress disorder.
>
> Mr. Martinez was a football player, has been a coach for many, many years, I'm sure has witnessed injuries much worse than this to himself and to his players, and yet did not suffer posttraumatic stress from those incidents. But according to Mr. Martinez, because of this incident, he's now suffering from posttraumatic stress, which caused him, according to Mr. Martinez, to require counseling, medication and this support animal.
>
> If you look at attachment C to the [presentence report], which is his victim impact statement, he says as a result of this incident, my doctor advised I researched and considered PTSD service animal training for my dog. This -- this was his family pet he had brought to practice many, many times, everybody had seen it. He says my dog went through extensive professional training. Part of his training was advanced obedience training, an AKC advanced behavior and obedience certification. This portion of training and the AKC certification process cost $625.
>
> From the defense -- from the defense standpoint, Your Honor, one, it -- it is -- it is questionable whether Mr. Martinez actually suffered posttraumatic stress disorder as a result of this particular incident. . . .
>
> THE COURT: But there's no ques--
>
> [DEFENSE COUNSEL]: They're not directly related --
>
> THE COURT: [Defense Counsel], there's no question the way -- I mean, the -- based on the facts of this case, the way -- the behavior of your client -- of your client here and everything, I mean, everybody has their -- has different ways of re-- dealing with this kind of attack, verbal attack that your client heaped on Mr. -- Mr. Martinez here. So he needed the -- it was a stressful situation. To some extent, yes, he did. Mr. Martinez suffer -- suffers anxiety and so forth here.

[JTr. dkt. 20 at 22-24.] (Emphases added). Tartamella questioned whether Martinez "actually suffered" PTSD "as a result" of Tartamella's conduct in this case, and whether the PTSD and the Tartamella's conduct were "directly related." Tartamella's

cross-examination of West focused on causation,[4] inquiring whether West investigated if Martinez's claimed PTSD injury was from Tartamella's conduct, or whether it could have been from some other factor.  Tartamella's argument that the CGC[5] training was not specialized dog training, and thus not reasonable or verified, was never raised in the Circuit Court below, and is waived.  See Moses, 102 Hawaiʻi at 456, 77 P.3d at 947; Hoglund, 71 Haw. at 150, 785 P.2d at 1313.

### State's Appeal

The State contends that the Circuit Court abused its discretion by reducing the restitution for the dog training, and not ordering Tartamella to pay the full cost of the training.  Tartamella argues that the State waived this argument on appeal because it failed to preserve the issue during the restitution hearing.  We conclude that the State's contention is waived.

"The general rule prohibiting new arguments on appeal prevents appellants from presenting new legal theories as to why they should have prevailed at trial."  Moses, 102 Hawaiʻi at 456, 77 P.3d at 947.  Arguments not raised below are generally deemed to have been waived on appeal.  Hoglund, 71 Haw. at 150, 785 P.2d at 1313.  When the Circuit Court reduced the State's requested restitution in half, the State did not object:

> THE COURT:  [Defense Counsel], there's no question the way -- I mean, the -- based on the facts of this case, the way -- the behavior of your client -- of your client here and everything, I mean, everybody has their -- has different

---

4       Defense counsel questioned West regarding other possible causes for Martinez's PTSD:

> Q.  (By [DEFENSE COUNSEL])  Okay.  Ms. West, at the time -- at -- at the time of the complaint of injury, were you aware that Mr. Martinez was under stress from a number of different causes, including complaints that parents had made against him, his inability to fill the football team, not knowing whether he was going to have -- have a team to enter into the OIA that year --
>
> . . . .
>
> Q.  (By [DEFENSE COUNSEL]) Ms. West, were you aware of any of the circumstances or any of the background of Mr. Martinez that would give you some way of assessing whether this particular injury would've been traumatic to him?

5       "CGC" refers to Canine Good Citizen training, which Tartamella raises for the first time in his Answering Brief to the State's appeal, referencing Appendix F, a webpage on the American Kennel Club's website.  Defense counsel at the restitution hearing did not mention CGC or refer the Circuit Court to this website.

> ways of re-- dealing with this kind of attack, verbal attack that your client heaped on Mr. -- Mr. Martinez here. So he needed the -- it was a stressful situation. To some extent, yes, he did. Mr. Martinez suffer -- suffers anxiety and so forth here.
>
> The only question is what is reasonable here, the -- the 220 -- the 625, the -- the 150, there's no question the Court agrees with that. The 625, based on the fact that part of this is that the dog is -- that is -- based on the information here is -- is Mr. Martinez's personal dog, but he -- nevertheless the dog went through training. So the 625, Ms. Prosecutor, half of that, what is half, half of 625? Get your -- get your phone, do the calculation.
>
> [DEFENSE COUNSEL]: It's 312.50.
>
> THE COURT: Okay. 312.50 plus 150, . . . that's the Court's order.
>
> [PROSECUTOR]: <u>Will the Court -- just for the record, will the Court indicate why it's determining that half the amount is appropriate and not the full amount that is</u> --
>
> THE COURT: <u>Just part -- as the Court just pointed out, part of this is that the dog involved here is the -- as the dog involved here is Mr. Martinez's personal dog, all right. And -- okay. That's the concern of the Court here, using your own personal dog as opposed to a profession-- a professional dog, nothing associated with Mr. Martinez, that's the concern the Court has over here, so that's why the Court is halving the 625. So that's the Court order. That's the amount of restitution for this order</u>. . . .

(Emphases added). The record reflects that the State requested *clarification* as to why the Court reduced the amount of restitution, but the State did not object to the halved amount nor argue why it was improper for the Circuit Court to reduce the amount; and thus, the State's contention of error was waived. See <u>Moses</u>, 102 Hawaiʻi at 456, 77 P.3d at 947; <u>Hoglund</u>, 71 Haw. at 150, 785 P.2d at 1313.

Therefore, IT IS HEREBY ORDERED that the Amended Judgment of Conviction and Probation Sentence filed on October 3, 2019, by the Circuit Court of the First Circuit, is affirmed.

DATED: Honolulu, Hawaiʻi, October 5, 2021.

On the briefs:

Taryn R. Tomasa
Deputy Public Defender
for Defendant-Appellee/Cross-Appellant

Brian R. Vincent
Deputy Prosecuting Attorney
for Plaintiff-Appellant/Cross-Appellee

/s/ Katherine G. Leonard
Presiding Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Karen T. Nakasone
Associate Judge